JUSTICE WEBER
specially concurs and dissents as follows:
I concur with issues I and II of the majority, but dissent on issues III and IV. Issue III asks if the District Court erred in concluding that the retirement adjustment payment contained in Chapter 823,1991 Montana Laws, violates 4 U.S.C. § 111. I do not find such discrimination.
The majority states:
*147 It is clear that the revenue, equalization and adjustment provisions of Chapter 823 are related parts of a comprehensive income tax program encompassing all pension income.
I agree that Chapter 823 is a comprehensive income tax program; however, this does not preclude this statute from encompassing other issues. The majority quotes verbatim the “pertinent” part of the bill’s title. The first part of the title of the restructuring plan indicates that the legislature attempted to “equalize” the taxes on all pension benefits. Although, listed after this in sequence, the provision indicating the legislature’s intent to provide the adjustment payment to State retirees living in Montana is an integral part of the Act as seen by the title’s wording:
.... To Provide for an Adjustment Payment to Retirees of State, Local, and Teacher Retirement Systems Who are Montana Residents ....
It is not necessary to rely upon the title to determine the intent of the legislature. The chapter starts with the following list of seven WHEREAS’S, and with the exception of the taxation of benefits referred to in the first WHEREAS, all of the remaining WHEREAS’s set forth an intent directly relating to the adjustment payment and the reasons for the adjustment payment:
WHEREAS, the State of Montana desires to tax federal, state, and private retirement benefits equally; and
WHEREAS, the State of Montana has in the past provided its employees with a benefit of employment through its tax system; and
WHEREAS, the Legislature desires and encourages qualified employees to enter and remain in public service; and
WHEREAS, it is the policy of the State of Montana to encourage public employees who become superannuated or incapacitated to retire and, to that end, to provide sufficient benefits to provide for retirement; and
WHEREAS, the Legislature wishes to encourage all retired persons to remain within Montana to provide a critical mass of retired persons who use certain services and facilities that are important to retired persons and that may keep and perhaps entice other retired persons into the state; and
WHEREAS, the Legislature has in the past granted increases in retirement benefits in a manner designed to provide relatively greater increases to those retirees who were employed during the years of low wages and whose benefits are relatively small; and
*148 WHEREAS, the Legislature therefore grants an increase in benefits to its former public employees who are residents of the state to provide compensation to encourage them to remain in Montana. (Emphasis added.)
The above statement of intent was added because the legislature knew that the Davis decision mandated that all pension holders must be taxed equally. The Act does that. At the same time, the legislature knew that such an increase in taxes on State pensions could create a situation where many retirees would leave the State. Acting through its legislature and governor, Montana as a sovereign and as an employer expressed a desire to provide an incentive for Montana retirees to remain in the State. Without subterfuge of any type the legislature declared this intent. Unfortunately, that openness appears to have been a basis for the majority to conclude there was discrimination.
If the same adjustment payment provided in the Act were provided in another act in some future year, and denominated a cost of living, no one would even raise the discrimination argument. I do not find a basis to condemn the adjustment merely because it is included with the tax.
The adjustment payment is paid to State retirees who already are receiving retirement benefits. I find nothing in the record which demonstrates a corresponding obligation by the State of Montana to make some sort of payment to federal retirees whose retirement benefits are paid by the United States. I do not understand how the payment by the State to its retirees can lead to a “clear” determination of discrimination, as compared to a federal increase to federal retirees which would not be such discrimination.
The fact that federal retirees do not get this adjustment is not discrimination as to source. The same adjustment is not given to private retirees either.
The basic intent of 4 U.S.C. § 111 has been lost. That intent is that the income taxation of Montana should tax federal and State retirement benefits at the same rates. The Act does that. An increase in pay to encourage State retirees to remain in the state is not discrimination as contemplated in § 111. An incentive to stay is not discrimination as to source. There is a recognition on the part of the legislature that the new tax on Montana public employee pensions might cause them to leave the State. Such a recognition, stated up front and in the open, does not equal the discrimination that the majority characterizes as “clear.”
*149 The fact that this adjustment payment comes from the general fund is also of no consequence. Any other cost of living increase for State public employees comes from the same source. This adjustment payment is no different than any other benefit which the State as an employer has a right to offer a group of its retirees.
The majority refers to § 19-20-713, MCA, which provides a cost of living increase for teachers in the Teachers’ Retirement System. The title of Chapter 658 of Montana Laws 1985 shows that only “certain” teachers within the retirees from this system would be benefitted by the increase. I do not understand how the majority condemns the 1991 Act because it is made applicable to “certain” retirees and yet refers to the Teachers’ Retirement Act as nondiscriminatory where it also benefits only “certain” teacher retirees.
In addition, the Teachers’ Retirement Act uses the “general fund” as the source of funds with which to pay teachers who retired from the various units of the University System and other schools, stating:
If the employer is the superintendent of public instruction, a public institution of the state of Montana, a unit of the Montana university system, or the Montana state school for the deaf and blind, the legislature shall appropriate to the employer an adequate amount to allow payment of the employer’s contribution. (Emphasis added.)
Section 3, amended § 19-20-605(3), MCA With this annuity type system, the employers’ part of the cost of living increase for “certain” retirees is paid by the State of Montana. How is that different from the present Act?
I conclude there is no discrimination “as to source” within the 1991 Act. As a matter of policy, Montana provides its own retirees an “incentive” without an intention to discriminate in any manner.
The Davis test of significant differences between the classes is not even reached here. One only has to determine the significant difference between classes if discrimination has occurred. Here, there is no agreement as to even what the appropriate classes are. The only classes that are pertinent to 4 UCS § 111 are “state retirees” and “federal retirees.” Both of these classes are taxed equally under this Act. It is only the segment of State retirees that receive the benefit.
While the majority merely mentions that the discrimination is “clear” it does not go on to explain how the “incentive” or “adjustment” is discriminatory. Nor does it explain how the Davis quote applies to what we have before us:
Under our precedents, “[t]he imposition of a heavier tax burden on [those who deal with one sovereign] than is imposed on [those who *150 deal with the other] must be justified by significant differences between the two classes.” (Emphasis added.)
Davis, 489 U.S. at 815-816,109 S.Ct. at 1508. The federal retirees have no heavier “tax burden” than do State retirees. The tax burden on both State and federal retirees is identical. The exemption of $3,600 is identical as are the tax rates applicable to both State and federal retirees. The range at which the exemption begins is $30,000 for both State and federal retirees. The only difference is that State retirees who reside in Montana are given an “incentive” to stay within the State that has employed them and from whom their pensions are derived. I point out here that the “incentive” is still subject to tax at the same rates as any amounts received by the retirees.
The District Court determined that the adjustment was part of a policy decision on the part of the State toward its employees. I would affirm the court on this analysis. The State acting as an employer has every right to act in concert with the sovereign and the legislature to provide an incentive to retired public employees to stay within the State that has been their home for years. This policy decision does not constitute discrimination against the retirees of any other sovereign or any other group of retirees. In this case, the other sovereign’s retirees are taxed identically with those of the State sovereign. I conclude that instead of condemning the legislature and the governor for their openness in enacting the Act, they should be commended for the forthright way in which this was done.
I also disagree with the conclusion that the adjustment is severable from the Act. Both the title and the statement of intent make it obvious that the adjustment or incentive to stay in Montana is an integral part of this Act. The incentive, based upon the fact that public retirees will now be receiving less money because of the mandatory taxation, should not be divorced from the tax plan itself. The tax plan explains why the employer State of Montana is granting this incentive. I do not believe the intention of granting some additional monies can be divorced from the taxation which applies to the retiree benefits and the adjustment. As demonstrated clearly in the WHEREAS clauses at the beginning of the Act, the taxation and the granting of the adjustment are not severable. The action of the majority is punitive in nature, taxing all benefits equally while eliminating the additional benefit awarded under the Act.
I also concur in the portion of Judge Rapkoch’s concurrence and dissent in which he concludes that the adjustment payment is not severable from the rest of Chapter 823.